May it please the Court, Counsel. I'm here on behalf of the plaintiff and appellant, Patrick Miller, doing business as the pit stop, on what's really a modest little case. We don't think that this case belongs in federal court. It shouldn't have been removed. It should have been remanded. And even if that wasn't the case, this is a very fact-intensive case that should have been sent on for trial by jury. Now, the defendants sought removal, and they had the burden of proof, but I don't believe that they carried that burden. There's nothing in the complaint to indicate that this case is worth anything more than $10,000. To get into state district court, you say, well, it's $10,000 or more, and that's what we did. The only thing that indicated that it might be worth a little more than that is during the argument, which was attended by my associate, the judge says, well, how much is at issue here? And he says, well, $10,000 to $20,000. And we put that in our memorandum. There was nothing indicating that that was without trebling and without attorney fees and without costs or anything of that nature. And there was no showing by anybody that, indeed, that was either single damages, treble damages, or whatever. It didn't constitute a judicial admission. And it was stated in the context, well, there was this previous case, more egregious conduct, and we settled it for well less than the amount necessary to get federal jurisdiction. So it was kind of a throwaway comment. It doesn't meet the standard of summary judgment-type proof that you need in order to establish federal jurisdiction. What's your response to the adversary's point that the damages would be trebled if they prevailed? Well, what I contend is when my associate said it was $10,000 to $20,000, he did not say that that was with or without trebling. And he did say it in the context of a previous case, which permitted treble damages, which was more egregious, which had been resolved for substantially less than $75,000. So what the district court did is draw inferences from what he said, but the inferences were in favor of the removing party as opposed to the appellant or the party that wanted it to be tried in a state court in the first place. In our briefing, we said, quite frankly, you have to state the jurisdictional amount in the moving papers. If you do it later on, it's too late. We didn't want to concede that they could dredge up evidence later on to try to establish federal jurisdiction. So but anyway, we said in the event that that's possible, yeah, if they'll start obeying the law, we'll limit our damage claim to no more than $20,000 for everything. And they didn't take us up on that offer. I mean, under this statute that you're claiming under, do you have a right to recover your attorney's fees if you prevail? And how does that bear on the Mountain Competitors? We had three claims, Your Honor. One was for damages under the Unfair Sales Act, no attorney fees to either party. That was our main claim. Second claim is that they violated a statute which was repealed about a year after we filed. This said if you sell gas or a product at less in one area than you do in another to end your competition, you violated Idaho law, and treble damages and attorney fees would be allowed for that. The third claim is that they violated the Unfair Sales Act, and we're looking for an injunction to make them follow the law. So two claims which would not permit attorney fees, which would not result in treble damages, and one claim that would permit attorney fees and would permit trebling. Wouldn't the amount in controversy look to the total amounts of things claimed? It would look to the total amount. But what my associate said is that, you know, this case may be worth $10,000 to $20,000. He wasn't saying without trebling. I mean, there's no indication in the record whether that included or excluded it. And I guess if the defendant has the burden of proof, they have to show that, yeah, the $10,000 or $20,000 was exclusive of trebling and so on and so forth. Well, if the damages were $15,000, let's say, somewhere between $10,000 and $20,000. If they were between single damages, you'd get up to the $75,000 with your attorney fees and trebling. Nobody had any confident evidence of what my hourly rate was. They said it was probably $175 an hour. I was charging these people. No, it is. It should probably be more, but you still have to deal. Let's say your opponents say their attorney's fees would be $70,000 or $75,000 alone on their side. I guess that doesn't prove your fees. I charged these people $15,000 for the first case. I mean, they're poor little mom and poppers. And I could have charged them ten times that or whatever, because we went through seven days in the jury trial. But, hey, you know, let's give them a break. So, I mean, you know. We'll have to give the appellees some tough questions about why the court. It's been a long time since I was a district judge, but I would have jumped at the opportunity to throw this case back to the State Court because once the lawyer says it's a $10,000 case, I'm out of here. I mean, this is. But Judge Windmill took the aggregate of all the possible recoveries and said it's well over $75,000. Is that a finding of fact, or what do we do with that? Well, I suppose it's a little bit of a finding of fact, but I think it's something that you reviewed DeNovo, and I think if he's wrong. You know, the thing is that he drew all the inferences in favor of the party that he should have been drawing the inferences against. So, you know, whatever it's worth, you better get on to the cost statute and whether they were selling below cost. Right. The cost statute is extremely fact intensive. It's not an uncomplicated area. And like the Federal Robinson Patent Act, that same kind of idea. It's kind of the same. But I have to tell you, the Unfair Sales Act is not really well drafted. It's not been litigated. This is the first case in Idaho that has gone to a court of record. We had a previous case. There have been a few other previous cases, but they've all been resolved at the district courts. There are no decisions of record in Idaho and very few elsewhere. The interesting thing is that the district court did not cite one unfair sales act from any jurisdiction in supporting its ruling. Now, you start with this. It's a difficult thing to calculate cost. It's a very fact intensive inquiry. And we had lots of facts before the judge. What what the product was bought for and so on and so forth. What the courts have said and actually this case, this court said in the William English case is that you use a reasonable method of cost calculation. That's what the Utah Supreme Court said in the Rio Vista case. And that's what the Arizona Supreme Court said in the baseline liquor case. And it makes sense. You present it to the jury. You say, OK, we think you include sale or the gasoline tax. The other side says, no, you don't. That's not reasonable. Our experts said if you don't include the federal and state tax, it's a violation of gap. They did not say that it isn't. The court did not say, well, I'm ruling as a matter of law that you don't include the state and federal gasoline tax. And he didn't say I'm ruling as a matter of fact that you don't do it. His decision is kind of nebulous. Did you get discovery of Maverick Country Stores internal accounting documents? Yes. They would have accounted for. They treat it. They treat gasoline as a cost and they treat it on a life basis. Last in, first out. That figures into our other argument regarding replacement cost. They told the court, well, we ought to get replacement costs, which is last or first in, last out. And yet they use an accounting method that says we use last in, first out. Life, which is completely counter to the replacement cost theory that they want. I mean, they want to show that they're making a profit. They use the regular life accounting system. They want to show that they're entitled to use replacement costs. So they just do the obverse for that in the very same case. But these are fact intensive inquiries. Well, does Idaho have a special statute on gasoline tax? Yes, it does. I've faced. I don't know what I know. But some states, they make the retail operator the collector of the tax rather than isn't a cost item to the retail operator. The retail operator is just a pass through your honor in Idaho. It is not a sales tax. It's an excise tax. It's we've cited to it. Idaho code sixty three, twenty four or five. And it says the tax, the incidence of the tax is on the distributor. If he doesn't sell that gasoline, he still pays the tax. It's a cost of doing business. And our accountants distributor at the wholesale level, the wholesale distributor, the person that picks it up at the terminal. He's the guy that has to pay the tax. If it burns up or he doesn't sell it, he's stuck with it. Doesn't pass it on to anybody. And both the U.S. Supreme Court in the Gurley case and the Idaho Supreme Court in the V1 case have said it's a cost to the distributor. It's not a cost tax that's collected from the consumer to be passed on. But we have the question of how do you treat the tax? What do you use for replacement cost? What is the trade area in which a replacement cost is to be utilized? All of those are fact questions and all of them were in dispute below. How did the district court deal with the replacement cost issue of FIFO versus LIFO or whatever? It didn't. There was conflicting evidence. Didn't do it. Didn't deal with it. Just says they're entitled to use replacement costs because they say that that's their lowest cost. And so that's what we'll do. And I didn't deal with the LIFO question. It's kind of a, you know, he's a great judge, but it's kind of a seat of the pants thing. No cases cited says you don't include the gasoline tax and criticize the cases. We cited to say you do, but didn't present any cases supporting his proposition. And Maverick can't find any either. All the cases there are say you include it as a cost on replacement. They have the burden of showing that they have the ability to use a replacement cost in order to do that. They show they have to show what the trade area is. They have to show that it's the prevailing price in the area. They didn't do any of that. And the judge didn't make any inquiry into it and didn't say, well, gee, these people need to really show something because the trade area issue is only something that applies to a defendant showing. He has to show that the replacement cost is from a trade area. He has to show if he say it says he's meeting competition, he has to show that the competition is being met in a particular trade area. The district court put all of those showings on the plaintiff and says, you have to show these in order to avoid a summary judgment. So all of the inferences were drawn in favor of the defendant and none were drawn in favor of the plaintiff. There was disputed evidence on the trade area. There was disputed evidence as to who was the price leader in the in the Wendell area. There was disputed evidence on how you treated the tax. There was disputed evidence on whether consumers had been deceived. In fact, the Idaho Unfair Sales Act says if you charge below your cost for a particular product to bring in customers, that's deceptive to consumers essentially as a matter of law. All of these issues were hotly contested and the court nevertheless granted summary judgment to the defendant. And it's our position that that was wrong, that we need to have this case remanded back for trial. And we think it ought to be remanded back with instructions to remand it to state court where it really belongs. And I think the policy of the Federal system would be served by that because this is a case of first impression in the state court. It's a small case and it ought to be decided in the state court. I'll reserve the rest of my time. Okay. Thank you, Mr. Jones. We'll now hear from Mr. Sinclair. The pleas of the court, counsel, I do not concur in many of the representations made by Mr. Jones, who I've known for many, many years in regards to what was reflected in the record below. He addresses, for example, the trade area. The trade area is of little significance in Wendell, Idaho, where there is only one place you can buy gas as a supply point. It's not a matter of whether there's four or five options. There is Burley, Idaho. That's the only place the pipeline goes. Mr. Curbs testimony or affidavit, which was filed by Pitstop, says that our expert says that there's one place you can buy it. That's all there is. In regards to the prevailing price, Mr. Curbs indicated he couldn't buy it for the same price. Mr. Curbs has the affidavits and the evidence shows, and there was no contradiction to this, uses a branded type of gasoline, which my client, Maverick, does not. My client can buy from whomever they want because they don't say we're technical or we're whatever. I would think that below cost issue doesn't depend on what Pitstop buys gas for, but on what Maverick buys it for. Correct. Why isn't the issue of accounting treatment of cost, whether it's last in and first out or first in and first out? Why isn't that an issue of fact? Because it's statutory. The statute, because we're using replacement costs, the statute says exactly how we have to calculate it. It says that we can use the 30-day prior period for looking at the price. They argue that we had to use four days because our inventory turned over in four days. The statute says we can look at the 30-day period. The statute says we add 1.5% for cartage. The statute says we add 8% for cost of doing business. It's all statutory. We simply have to meet the statutory requirements. Now, if we report it differently on our tax return, that's a whole different set of interests. What we have to do to be not guilty of the Unfair Sales Act is meet the statutory requirements. And what Judge Windmill said is it doesn't matter how they report it on their tax returns. It's whether or not they met the statutory definition of replacement costs. And we did. We showed them, as they said, they got our books. We showed them our actual price of purchasing it. Mr. Kerb sends an affidavit saying, I can't believe they can buy it for that price. We did buy it for that price. We produced those documents. There's no question about that. So that point is we followed the statute. We followed the definition in the statute to determine whether we breached the statute. And by using that definition, the LIFO is irrelevant. I see. Okay. What about the jurisdiction issue? Why is it shown that there's $75,000 in controversy? Several reasons. First of all, the burden does shift to us to show that when the complaint has a general allegation greater than $10,000. It doesn't say $10,000 or less. It says greater than $10,000, which is what you have to do to get into district court in Idaho. Also, the representation made by their counsel in oral argument, and also the same reputation made in their memorandum, says on page 5 of their memorandum, which is at the excerpt of record, page 18, the rough estimate of plaintiff's counsel for what it's worth is that the monetary damages are between $10,000 and $20,000. Now, at this point in time, they like to back up and they say, well, no, the damages are only $3,000. Then you get a treble and they're $10,000. Or they're only $8,000. You get a treble and you get to $24,000. What they represented to court was that the damages were $10,000 to $20,000. They represented to the court that the damages were less than the statutory amount, $75,000. They then file an affidavit the same day withdrawing that statement, withdrawing the fact that their damages were less than the $25,000. And if you look at the cases on that, that is a factor the Court's allowed to look at in regards to jurisdiction, is the withdrawal of a basic stipulation, and that's the Hanna case, Hanna v. Miller. The Court looked at our petition to remove, or our notice of removal, which said, if you look at the allegations containing the complaint and the exhibits, it is apparent on the face that it's in excess of $75,000. And then if you look at the injunctive relief, it is also in excess of $75,000. Was the plaintiff asking for attorney's fees in their complaint? Yes. So the trial court would be entitled to consider that as part of the recovery, too? Certainly. And there are several cases that indicate that you look at everything that they were looking for. You look at the attorney's fees. You look at the injunction, if it's going to cause damages in excess of what is otherwise alleged in the complaint. Well, that's pretty speculative, though, isn't it, the injunction? At this stage, you don't have any evidence yet. We do. We have a signed affidavit by our client who indicates that he has analyzed what they're asking in the complaint for us to have to price it. And that versus the legal pricing would be in excess of $75,000. We have an affidavit of that effect that was never contradicted. There was never a – there was no contrary information or anything challenging it. So we have uncontradicted affidavit to that exact effect. And then we have the attorney's fees affidavit, which indicates, as the Court pointed out, only one side of the case they believe would cost $75,000. Now, Mr. Jones says he only charged that. Yeah. Well, actually, no, it wasn't our side. We asserted what we believed Mr. Jones's fees would be the plaintiff's fees. You put an affidavit on his fees? We put an affidavit on what we think it would cost an attorney to do the case. Okay. So it's not really his fees. I understand. The market price and the amount of time based upon the complexity of the issues that were alleged. Now, Mr. Jones says he only charged – he said he only charged them $10,000. He didn't say what he would submit in a fee cost if he had the right to collect it back against the other side. So an alien party affidavit might be different. Might be a little higher. And actually, the district court made that observation in its determination of the amount in that it said that while counsel may have indicated that the damages may be less than $20,000, I think they may be trying to be conservative to avoid going to federal court. I believe Judge Lay in his Creighton Law Review article back in I think it was 1984 pointed out the fact that it is a challenge for out-of-state corporations to do litigation in rural areas like Wendell where the pit stop's a local business and you're from outside the business. And that's part of the reasons that Judge Lay proposed that the diversity of jurisdiction was good as long as you could show that the damages were more likely to be in excess of $75,000 than not. And Judge Windmill went through that with excruciating pain, looked at it twice to make sure that he was not making an error in that regard. Do you remind me of where Wendell is? Certainly. I've got a map of Idaho. Well, if you have Idaho and you start at Boise, which is pretty much on the western side of the state, if you drive about an hour, you're going to be to Wendell. Then you're going to hit Drome. Then you're going to hit East. On 84? Yes. That's right. So it's basically directly east about an hour. How far is Wendell from Burley? Well, from Wendell to Twin is going to be about 20 miles and then to Burley about another 25, so about 45 miles from Burley. Is that the distribution point in Burley for the tank truck? Yes. For all of what they call the Magic Valley in south-central Idaho. That's the only place you can buy it, although you can buy many different parties' oil there. The tax issue is one that we feel doesn't really matter in the ultimate decision, because that's only one of two things that the pit stop did not prove in their case. But on the tax issue, as my clients asserted in their affidavit, they pay the taxes, and it's part of the bill when they buy their gas. They don't pay the state tax. They pay the federal tax when they buy the gas at the pipeline. The distributor pays the federal tax when it buys the gas? We call it a direct seller. If pit stop were to buy from, we pay it when we buy the gas at the terminal. Does Maverick send its own tank trucks over to the distributor to fill up? We do. So you're getting a wholesale, you're getting a discount for volume? We get volume discounts. We get early pay discounts. We have several discounts. Basically, because of the amount of gas we get, we get a discount off of the prices that some of the other parties get. More than one store? Many stores, yeah. Up and down the 84? Exactly. We're a Wyoming corporation, and we work through that whole corridor. So when we get the bill for the gas, though, tax is not part of the bill. Tax is on the bill, but we get a tax for the gas, and that tax for the gas includes all the costs that the manufacturer, whoever put that together, is charging to us. And then on that same bill is a separate line item that says, and here's the federal tax that you have to pay. There's no state tax at that point in time. We take the product, we sell it, and then we, within 40 days, have to submit to the state taxing entity the state tax. And it's a straight pass-through. The argument that they like to make in this situation is that we have to basically mark up, for a cost of doing business, we have to mark up the tax. So if there was a 10% increase in tax, then we'd have to mark up our product 11 cents and, in fact, make another penny profit because that penny does not go to the government. It stays in our pocket. But in this situation, what it would do is make us charging statutorily, make us charge more than the cost of doing business. Because if the tax goes up, it doesn't change our cost of doing business. It doesn't change our overhead, our utilities, our labor. It doesn't change anything we do. And we pass it through and everybody passes it through. But we don't mark it up when we pass it through. Nobody does. The fact that we do have to pay the tax is true. But the cases that are cited by Mr. Jones, and this is a distinction he failed to make in his oral argument, is that those cases, I think it was Oklahoma has a statute, that statute specifically includes taxes in the statute as an item that they consider cost of doing business. The Idaho statute does not have that. It does not mention taxes as a separate one. The other cases they look at are not Unfair Sales Act cases. They're tax cases. If the Idaho statute just says cost. Well, it doesn't. It doesn't. I mean, it puts in cartilage. Okay. It adds that, which is our trend. It's not the same. Wouldn't cost under it if it says that you sell for less than cost? That's the statutory language. Yeah. Normally I would think there would be a fact issue if it's not defined what is cost and what are the things included in it. And people could have experts come in and say, well, cost should include a tax or it shouldn't include a tax. And our experts said it shouldn't. But their CPA, which I question. Probably said it should. Well, yeah. I guess my question is whether a certified public accountant is an expert in regards to the Unfair Sales Act. Because in his deposition, he said he was not. But did the district court strike his affidavit? His affidavit? The district court struck partially affidavit. Well, this is in his deposition, that he said he was not an expert. But, I mean, in other words, do we have that CPA's – if we have that CPA's evidence before us and it's in the record, does it create a factual dispute? I don't think so. Because you need to look, as the court asked me to, to the specific wording of the statute. Yeah. Give me a hand. I'm missing something I should have. Okay. So when you look at the statute, and this is Idaho Code 48403, subsection B, double A, actually C, subsection C. Is that in your brief? Yes. It's in the statutory section, so we can find it in the brief. It is in the brief. I'll ask Ms. Fisher if she can find it while I'm giving this to you. The statute is supposed to be in the front of your brief. Yeah. It will be. I apologize. Let me look there. Unfortunately, it's cited many times in the brief, so I'll again ask her to see if she can locate that so that we can get it specifically. The other place it is, I believe, is in the memorandum of decision of Judge Windmill. Don't take up your time. Yeah. We can find it. We can find it later. Here's my concern. Let me explain it to you, and then I'll study it later. But when I was in practice, I once spent a good number of years working on a forced discrimination case. And, you know, parties argued a lot and had a lot of expert testimony disputing what was cost. And if the statute just says cost and doesn't define it. It does, Your Honor. And that's why I apologize. It says when I'm using this act, the term replacement cost shall mean the cost per unit at which the merchandise sold or offered for sale could have been bought at the nearest source of supply to retailer, wholesaler or direct seller any time within 30 days prior. So it's the cost of the merchandise that could have been bought. The merchandise, the tax is not a merchandise. I mean, to say it's the cost per unit. Per unit. Does it really answer whether you should add the tax to the cost? The tax is not a cost of the merchandise. That's what I'm focusing on in this statute. The tax is something that the federal government and the state government have tacked on to the cost of the merchandise for their purposes. It's not a cost to the merchandiser. It's not a cost to the manufacturer. It's not something you pay for the gas. It's something you pay because the legislature has decided they're collecting a tax on this. We're trying to if someone's trying to assess whether. Someone in business is doing predatory pricing and they're selling something for less than the total amount it costs them. You would normally you would sort of logically include a tax if they had to pay it. But the evidence that excludes that the evidence is replete that all of our all of our pricing included the tax. The only question is whether we have to mark the tax up by a penny to avoid doing predatory pricing. Do we have to mark the tax up a penny to establish what our cost of doing business is? And what I'm saying is tax is not a cost of doing business. It is totally unrelated. It doesn't increase or decrease our cost of doing business. Our cost of doing business, our utilities, our salaries, our leases, are all of our costs that this this statutory markup of eight percent supposed to cover do not vary at all based upon taxes. The taxes are posted on and sold through completely. So I think by the fact that the statute defines it as the cost per unit of the merchandise shows that it's not dealing with taxes. It's dealing with what the manufacturer of the gas is charging us for the gas and the taxes and add on. The statute say the merchandise. It caught you. Yeah. The cost per unit at which the merchandise sold or offered for sale could have been bought. The merchandise could have been bought. And as I point out, the statements that have included tax in this calculation have the tax specifically in their statute along with cartilage. Our statute has a cartilage, but it has no tax statement in there. And little strange the federal court has to give an interpretation. And you don't, Your Honor, because let me quickly, with my last two minutes, get to the point. That's the second item that they had to prove out of the four items underneath the unfair sales. The fourth item shows that they have to show that our actions result in some deceit to the consumer, lessening of competition, a monopoly, or forgot the fourth one, an unreasonable restraint of trade. Their expert testified in their deposition, and this is on pages 33 and 38 of the supplemental excerpt of record. Their expert testified that they had no opinion in regards to any of those four items. And our people, our expert testified that there was no evidence of any deceit, lessening competition, unreasonable restraint of trade, or monopoly. So the direct and uncontradicted evidence is none of those exist. Now, they try to get around that by saying we don't have to prove what the statute asks. All we have to do is go under 48-402, which says that if you sell certain, and certain is the key word, if you sell certain items of merchandise below cost in order to attract patronage, it is a deceptive form of advertising. It's an unfair method of competition. Now, how do you find out what certain items 402 is reflecting? Well, the only way you can find out what those certain items are is to go to 404, because 404 says if you sell any merchandise, if you sell any merchandise, it's at less than cost, where it deceives the purchaser, lessens competition, unreasonably restraints trades, or creates a monopoly, then that is contrary to public policy and contrary to the policy of this Act. Judge Windmill pointed out there was absolutely no evidence to meet this fourth requirement that they had to meet in this Act.    There is no evidence to meet that statute. So based upon that alone, regardless of the cost, regardless of the taxes, the matter should be sustained. Thank you. Thank you very much. Well, now, thanks to Mr. Sinclair. We'll hear further from Mr. Jones. Thanks, Ron. With regard to the question of what you have to show to make a prima facie case, the Marion case, which is an unfair sales act case. And incidentally, they cited no unfair sales act cases to establish the elements that you had to show. But in the Marion case, it says that if you present evidence that your competitor charged low prices, you lost customers to that competitor and you lost money as a result. You've made the kind of case that you have to to make a case under the Unfair Sales Act. We've shown all of those elements. Our CPA was not retained to go into the questions that Mr. Sinclair was talking about. Mrs. Benton had testified. She's the manager. She said that when Maverick underprices us, we can't meet that. Our customers go over to their business and we've lost money. And the CPA did show that their revenues go down when there are these periods of underpricing. So we did make that showing with regard to the question of what is deceptive. Idaho Code Section 45 6 0 2 says, as I mentioned before, that 48 4 0 2 pardon me, that the practice of selling certain items of merchandise below cost in order to attract patronage is a deceptive form of advertising. And it says the act is such an act as deceptive to consumers. And it is because what happens is that Maverick underprices Pitstop and the other competitors in the market. Those people, according to the affidavits, go to Maverick. They buy Maverick's in-store goods, which are priced considerably higher than the competition. Pitstop marks its in-store goods up 35 percent. Maverick marks its in-store goods 42 percent. So the consumer can end up paying more because they go in and buy those in-store goods. They pay a little less for the gas, but they pay a lot more for the Coke and the sandwich. And all of those other things that people buy when they get drawn in by these artificially low prices. And Judge Windmill simply could not understand that to be the case. With regard to the question of. That isn't a that isn't selling gasoline below cost. If they if they make a big. You first have to prove that they're violating the statute in selling gasoline below cost. Then it's it doesn't matter how much of a markup they get on Coca-Cola or chewing tobacco or whatever else they're selling. Peanuts and other junk food that they can make a lot of money on that stuff. But that has nothing to do with your your problem. Your problem is is you can't meet their gasoline price and get your customers back. Well, there is there is one way that does figure in. It is deceptive to the consumer, which is one of the elements under the unfair. That was the reason the legislature may have passed the act. But the issue that Judge Windmill had to decide is you are. You prove. Are you prepared to prove that Maverick is selling gas for less than they're paying for it? That's true. And we had we had, I think, plenty of evidence in the record to indicate that that is the case, that they would be picking up gas on, say, the 14th of July. Evidence showed that only that Maverick gets a bigger volume discount from the refinery people than you do. The people you buy your the people you buy your gasoline from don't give you as good a discount as Maverick gets from the people. Maybe it's the same people. I don't know. But they can get a bigger discount because they have a bigger volume. Well, they say that. But we look at the figures and it doesn't look like that is the case. I mean, we know what they got their gas for and we know that that price includes the gasoline tax. And they say, well, that's a prevailing price in the area. And our guy, Brent Kerbs, who's also a wholesaler, says it's not a prevailing price. Doesn't that create an inference in favor of Pitstop that would preclude summary judgment? Judge said no. Well, we'll take Maverick's word on this one. Thank you. Thank you very much, Mr. Jones. And we appreciate. Yes. OK. Page twenty five. Thank you very much. It's very nicely argued by counsel on both sides. We'll say over a ten to twenty thousand dollar damage claim. There's a lot of good, high priced, talented advocacy being done here. So we appreciate it. The case will be submitted. Thank you very much.
judges: Lay , Goodwin, Gould